IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN PAUL BROWN,                        §
                                        §
          Plaintiff,                    §
                                        §
v.                                      §          1:25-CV-2168-RP
                                        §
EQUIFAX INFORMATION SERVICES,           §
LLC, et al.,                            §
                                        §
          Defendants.                   §

## **ORDER**

Before the Court is Defendant Midland Credit Management Inc.'s ("Midland") Motion to

Dismiss for Failure to State a Claim, (Dkt. 8), Plaintiff John Paul Brown's ("Plaintiff") Response to

Midland's Motion, (Dkt. 11), and Midland's Reply, (Dkt. 15). Also before the Court is the Joint

Motion to Dismiss for Failure to State a Claim by Defendants Equifax Information Services, LLC

("Equifax") and Experian Information Solutions, Inc. ("Experian") (collectively, the "CRA

Defendants"[1]), (Dkt. 34), and Plaintiff's Response to the CRA Defendants' Motion, (Dkt. 47).

Having considered the parties' submissions, the record, and the applicable law, the Court will grant

both motions to dismiss but also grant Plaintiff leave to amend his Complaint.

## **I. BACKGROUND**

On December 29, 2025, Plaintiff, proceeding pro se, filed his Complaint in this case. (Dkt.

1). Plaintiff claims that Defendants effectuated a "multi year campaign of credit reporting abuses,

unlawful debt collection, and privacy violations." (*Id.* at 1). Plaintiff alleges this campaign

commenced in 2021 when Plaintiff was a tenant at the Waterford Trails Apartments in Spring,

---

[1] The Court notes here that while a fellow Defendant, TransUnion, LLC, is also a credit reporting agency ("CRA"), TransUnion, LLC has not yet appeared in this matter, despite having been served on March 19, 2026. (Dkt. 17).

Texas, and an eviction and collection case was filed against him in Harris County Justice Court, which was dismissed on February 10, 2021 with no judgment for rent, fees, or damages against Plaintiff. (*Id.* at 2). Despite this alleged dismissal, Defendant SC Waterford Trails LLC d/b/a Waterford Trails TX ("Waterford Trails") purportedly claimed that Plaintiff owed final move-out charges and "placed or sold" the account to Defendant IQ Data International, Inc. ("IQ Data") for collection. (*Id.* at 3). Then, according to Plaintiff, "IQ Data began reporting a collection tradeline for Waterford Trails TX on all three credit reporting agencies['] reports in or about March 2021, listing an original balance of 1,865 dollars and later inflating it to over 2,300 dollars, with status Collection and Charge Off." (*Id.*). From 2021 through 2025, Plaintiff alleges that he submitted multiple written disputes to IQ Data and all three credit reporting agencies—Defendants Equifax, Experian, and TransUnion, LLC ("TransUnion")—and made formal complaints to the Consumer Financial Protection Bureau ("CFPB") "detailing that the debt was based on a dismissed eviction, identity theft, and fraud." (*Id.*). Despite Plaintiff's actions, he alleges that all three credit reporting agencies continued reporting the IQ Data tradeline. (*Id.*).

Plaintiff also alleges that Defendant Midland "reported a Capital One Auto Finance account with a balance of 8,206 dollars as Collection and Charge Off" to the credit reporting agencies but that on "March 24, 2025, Midland sent Plaintiff a letter stating the account was closed, collections had ceased, the balance was 0.00 dollars, and Plaintiff had no further obligation." (*Id.*). Finally, Plaintiff also asserts that Defendant I.C. System ("I.C. System") reported an AT&T U-Verse collection to the credit reporting agencies but on "February 28, 2025, I.C. System sent a Credit Reporting Removal letter admitting it was unable to verify the account and had requested deletion from the credit reporting agencies." (*Id.*). Plaintiff contends that despite these letters from Midland and I.C. System, Equifax, Experian, and TransUnion continued reporting those collections as "active, derogatory, and collectible as late as December 2025." (*Id.*).

Further, Plaintiff purports that "[d]espite Plaintiff placing fraud alerts and a security freeze on his credit files after discovering identity theft indicators," the credit reporting agencies "show[ed] numerous account review, collection, and skip tracing inquiries from IQ Data, data brokers, landlords, and lenders" on Plaintiff's reports. (*Id.* at 4). Plaintiff then describes several harms he has faced because of the credit reporting agencies' reports: denial of an auto finance application in February 2025; denial of vehicle financing by multiple lenders in 2024; denial or deterrence from housing opportunities; subprime FICO scores; and "severe emotional distress, including anxiety, humiliation, sleeplessness, and fear for his family's financial security." (*Id.*).

Based on these allegations, Plaintiff asserts several causes of action: (1) a Fair Credit Reporting Act ("FCRA") violation for failure to assure accuracy against Equifax, Experian, and Transunion (citing 15 U.S.C. §§ 1681n, 1681o); (2) a FCRA violation for failure to reinvestigate against Equifax, Experian, and Transunion; (3) a FCRA violation for impermissible furnishing and access against all Defendants (citing 15 U.S.C. §§ 1681b(a), 1681b(f)); (4) a FCRA violation for violating their "furnisher duties" against IQ Data, Waterford Trails, Midland, and I.C. System; and (5) a Fair Debt Collection Practices Act ("FDCPA") violation against IQ Data, Midland, and I.C. System." (*Id.* at 4–6). Plaintiff seeks actual damages; statutory damages under the FCRA and FDCPA; punitive damages; injunctive relief; and attorneys' fees, costs, and pre- and post-judgment interest against all Defendants, jointly and severally. (*Id.* at 6). Midland and the CRA Defendants each filed a motion to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). (Midland Mot. Dismiss, Dkt. 8; CRA Defs.' Mot. Dismiss, Dkt. 34).

## II. LEGAL STANDARDS

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Additionally, Plaintiff is proceeding in this case pro se, and "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). "But even under this lenient standard, self-represented litigants must abide by the rules that govern the federal courts." *Thomason v. World Fin.*, No. 1:23-CV-00109-ADA, 2023 WL 4375499, at *2 (W.D. Tex. July 6, 2023), *report and recommendation adopted*, No. 1:23-CV-00109-ADA, 2023 WL 4833482 (W.D. Tex. July 27, 2023) (citing *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014)). Therefore, "pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief." *Simbaki*, 767 F.3d at 484.

### III. DISCUSSION

### A. Midland's Motion to Dismiss

The Court will address each motion to dismiss in turn. Generally, Midland moves to dismiss Plaintiff's claims against it because Plaintiff has not properly identified the specific statutory provisions allegedly violated by Midland nor pled any facts specific to Midland that would support a plausible claim for relief. (Midland Mot. Dismiss, Dkt. 8, at 2). Therefore, Midland asserts that Plaintiff's Complaint consists of improper "group pleading" and is a "shotgun pleading" that fails to provide fair notice under Federal Rule of Civil Procedure 8. (*Id.* at 3–4). Midland also raises several arguments as to why Plaintiff's claims against it fail as a matter of law. (*Id.* at 5–8). Plaintiff's Response largely restates the allegations of his Complaint without any persuasive assertions to counter Midland's grounds for dismissal. (Resp. to Midland Mot. Dismiss, Dkt. 11, at 1–3).

### 1. Count IV of Plaintiff's Complaint

Starting by addressing Count IV of Plaintiff's Complaint, Midland asserts that "Plaintiff does not identify any specific subsection of the FCRA that Midland allegedly violated in connection with

its furnisher duties" and thus cannot state a plausible claim for relief under Count IV against Midland. (Midland Mot. Dismiss, Dkt. 8, at 5).

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA primarily regulates consumer credit reporting agencies, but it also creates various obligations for "furnishers of information" to provide accurate information to consumer credit reporting agencies. *Davis v. World Fin. Network Nat'l Bank*, 2009 WL 4059202, at *2 (N.D. Tex. Nov. 20, 2009). The FCRA does not define "furnisher of information," but courts have construed the term broadly to mean "an entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *14 (W.D. Tex. Aug. 23, 2010), *report and recommendation adopted*, 2010 WL 11652114 (W.D. Tex. Sept. 20, 2010).

Construing Plaintiff's claims liberally, as he is proceeding pro se, the Court will evaluate whether Plaintiff stated a plausible private right of action against Midland as a furnisher of information, even if he did not technically cite the correct subsection of the FCRA. "To state a claim against a furnisher under § 1681s-2(b) of the FCRA, a plaintiff must allege that []he notified a consumer reporting agency of inaccurate information, the consumer reporting agency notified the furnisher of the dispute, and the furnisher failed to conduct an investigation, correct any inaccuracies, and notify the consumer reporting agency of the results of the investigation." *Thomason*, 2023 WL 4375499 at *3. Section 1681s-2(b) also "requires a showing of a factual inaccuracy in suits against furnishers" because "damages would be impossible to prove without an inaccuracy." *Id.* (collecting cases). A credit entry is "inaccurate" within the meaning of the FCRA if "it is patently incorrect" or "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

6

The Court finds that Plaintiff has not alleged an "inaccurate" credit entry under the FCRA nor satisfied each of the elements of a § 1681s-2(b) claim. Rather, Plaintiff merely alleges that the credit reporting agencies continued reporting the Midland account despite Midland's letter closing the account—rather than alleging that the report was *inaccurate* under either definition in *Sepulvado* or properly detailing the elements of a § 1681s-2(b) claim.[2] (Resp. to Midland Mot. Dismiss, Dkt. 11, at 2). *See Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017), *aff'd*, 738 F. App'x 281 (5th Cir. 2018). Indeed, Plaintiff's non-particularized allegations that the Midland "furnished information they knew or should have known was inaccurate and failed to reasonably investigate, correct, or delete it after notice from credit reporting agencies and Plaintiff," (Compl., Dkt, 1 at 5), are mere legal conclusions that do not properly state a claim upon which relief can be granted.

Further, to the extent that Plaintiff sought to claim that Midland reported his account as a "charge off,"[3] that is also not clearly actionable under the FCRA. "The FCRA allows credit reporting agencies to retain a 'charged off notation' on a consumer's credit report for up to seven years." *Thomason*, 2023 WL 4375499, at *3 (citing 15 U.S.C. § 1681c(a)(4)). And a court in this Division as well as courts across the country have rejected the argument that reporting recurring charge offs is actionable under the FCRA. *See, e.g.*, *id.*, *Otto v. TransUnion, LLC*, No. 6:21-CV-00379-AA, 2022 WL 787940, at *3 (D. Or. Mar. 15, 2022) (collecting cases).

---

[2] The Court notes here that Plaintiff references several exhibits in his Complaint that were not attached to his filing. The Court would have benefited from reviewing those exhibits in assessing Plaintiff's claims and encourages Plaintiff to include those exhibits when moving to amend his Complaint, as detailed later in this Order.

[3] "A 'charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Thomason*, 2023 WL 4375499, at *3.

**2. Count III of Plaintiff's Complaint**

Under this Count, Plaintiff alleges that all Defendants violated Sections 1681b(a) and 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). Plaintiff claims that "[a]fter learning Plaintiff's file was subject to fraud alerts and security freezes, Defendants continued to furnish Plaintiff's reports for collection, skip tracing, and data mining; permit repeated same day auto finance and account review inquiries; and report information without a valid permissible purpose." (*Id.*). Plaintiff's conclusory assertion that "all Defendants" engaged in this conduct, without any specific conduct alleged by Midland, constitutes improper group pleading. *See Magee v. BSN Sports, LLC*, No. 3:21-CV-01726-G-BT, 2022 WL 3701627, at *6 (N.D. Tex. Aug. 8, 2022), *report and recommendation adopted*, No. 3:21-CV-1726-G-BT, 2022 WL 3702035 (N.D. Tex. Aug. 26, 2022) (finding that shotgun pleadings "fail to definitively attribute particular conduct to specific defendants, thereby falling short of the federal pleading standard" and "are subject to dismissal under Rule 12(b)(6)."). But, construing Plaintiff's Complaint liberally, as he is proceeding pro se, the Court will evaluate whether Plaintiff has stated a plausible claim against Midland under this Count.

"Section 1681b [of the FCRA] limits the circumstances in which consumer reporting agencies can provide consumer reports." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 876 (W.D. Tex. 2016). "To properly assert a violation of § 1681b(a) and recover statutory damages, a plaintiff must allege (1) there was a consumer report; (2) the defendant used or obtained the report; (3) without a permissible purpose; and (4) the defendant acted willfully." (*Id.*) (citing 15 U.S.C. §§ 1681b(a), 1681 n(a)(1)(A)). Plaintiff's Complaint fails to satisfy these requirements because Midland is not a consumer reporting agency; rather, as Plaintiff himself alleges, Midland is a "national debt buyer and furnisher," (Compl., Dkt. 1, at 2). *See Crain v. Credit Prot. Ass'n*, No. 3:09-CV-2353-D, 2010 WL 1223127, at *2 (N.D. Tex. Mar. 2, 2010), *report and recommendation adopted*, No. 3:09-CV-2353-D, 2010 WL 1233517 (N.D. Tex. Mar. 29, 2010)

8

Plaintiff also alleges that Midland's conduct violated § 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). "Section 1681b(f) of the FCRA only permits a person to use or obtain a consumer report for certain statutory purposes." *Kennedy v. Equifax Info. Servs. LLC*, No. SA-23-CV-00470-FB-ESC, 2024 WL 332925, at *7 (W.D. Tex. Jan. 29, 2024), *report and recommendation adopted*, No. CV SA-23-CA-00470-FB, 2024 WL 874147 (W.D. Tex. Feb. 29, 2024). "This section expressly makes the permissible purposes set out in § 1681b(a) applicable to users of credit reports and provides a means to impose liability for using or obtaining a consumer report in violation of the FCRA." *Crain*, 2010 WL 1223127, at *2. Plaintiff similarly fails to allege any facts regarding when or how Midland obtained his credit report and how that act caused him damage. *See Kennedy*, 2024 WL 332925, at *7 Accordingly, the Court finds that this Count should be dismissed against Midland in its entirety.

### 3. Count V of Plaintiff's Complaint

Plaintiff alleges that Midland and two other Defendants violated the FDCPA by "misrepresenting the character, amount, and legal status of debts; attempting to collect on void, time barred, and identity theft debts; continuing collection after failing to validate; using unfair means by leveraging false credit reporting as coercion; and permitting skip tracing pulls to pressure payment on disputed debts." (Compl., Dkt. 1, at 6). "To plead a viable FDCPA claim, a plaintiff must allege that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Le v. Midland Credit Mgmt., Inc.*, No. 1:25-CV-00870-ADA-SH, 2025 WL 4060085, at *2 (W.D. Tex. Nov. 10, 2025), *report and recommendation adopted*, No. 1:25-CV-00870-ADA-SH, 2026 WL 130798 (W.D. Tex. Jan. 14, 2026) (citing *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 782 (E.D. Tex. 2023)). The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

While Plaintiff has listed various acts prohibited by the FDCPA that Midland allegedly committed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). Here, the Court finds Plaintiff has only alleged a "formulaic recitation" of the third element of a viable FDCPA claim. There are no factual allegations present in the Complaint that allows the Court to draw the reasonable inference that Midland engaged in "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Therefore, the Court concludes Plaintiff has failed to state a plausible FDCPA claim against Midland.

### 4. Plaintiff's Request for Leave to Amend

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation and internal quotation marks omitted). For pro se parties in particular, a district court generally should not dismiss a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). In his Response to Midland's Motion to Dismiss, Plaintiff requests leave to amend "if the Court [found] any part of the Complaint insufficiently specific." (Resp. to Midland Mot. Dismiss, Dkt. 11, at 2). Midland opposes Plaintiff's request for leave to amend because his "Response reveals no additional facts that could cure" the deficiencies of his Complaint. (Midland Reply, Dkt. 15, at 3). While the Court agrees with Midland that Plaintiff has not yet properly moved for leave to amend his Complaint by submitting a First Amended Complaint pursuant to Local Rule CV-7(b), the Court will allow Plaintiff to make such a motion because of Plaintiff's pro se status and the Court's discretion to grant leave to amend freely.

10

### B. The CRA Defendants' Motion to Dismiss

The CRA Defendants begin their Motion to Dismiss by arguing that Plaintiff's claims against them are "purely conclusory and contain _no_ specific factual details pertaining to each specific defendant." (CRA Def.'s Mot. Dismiss, Dkt, 34, at 4) (emphasis in original). The CRA Defendants contend that in each of the three causes of action against the CRA Defendants, Plaintiff "lumps the CRA Defendants together, referring to them collectively as "Defendants," without specifically identifying or itemizing _which_ defendant engaged in the alleged conduct or _which_ claims are asserted against each named defendant." (_Id._) (emphasis in original). The Court agrees that this kind of "shotgun pleading" is insufficient to fairly put the CRA Defendants on notice of which of their actions caused Plaintiff the harm he now seeks to remediate. _See Magee_, 2022 WL 3701627, at *6 (finding that shotgun pleadings "fail to definitively attribute particular conduct to specific defendants, thereby falling short of the federal pleading standard" and "are subject to dismissal under Rule 12(b)(6)).

Construing Plaintiff's Complaint liberally, however, as he is proceeding pro se, the Court will also address the CRA Defendants' arguments as to the substance of each claim Plaintiff purports to bring against them.

### 1. Counts I & II of Plaintiff's Complaint

Under the FCRA, "[a] consumer can bring a civil action against a credit reporting agency for negligent or willful violations of its statutory obligations." _Reyes v. Equifax Info. Servs., L.L.C._, 140 F.4th 279, 285 (5th Cir. 2025) (citing 15 U.S.C. §§ 1681n (willful noncompliance), 1681o (negligent noncompliance)). The CRA Defendants argue that Plaintiff fails to state a claim under the relevant FCRA sections for these Counts—Sections 1681e(b) and 1681i, respectively—because to state a claim under either provision, Plaintiff must allege that the CRA Defendants reported inaccurate information. (CRA Def.'s Mot. Dismiss, Dkt. 34, at 5) (citing _Reyes_, 140 F.4th at 286)). Plaintiff

alleges that the CRA "Defendants failed to follow reasonable procedures . . . by continuing to report the IQ Data Waterford collection after eviction dismissal" and by "reporting Midland and I.C. System accounts contrary to their own closed or removed letters." (Compl., Dkt, 1 at 4). The CRA Defendants argue that "Plaintiff does not explain how the alleged reporting information was inaccurate at the time it was reported" and that "[n]umerous courts across the country have held that a plaintiff's broad statement that there is an inaccuracy— without further explanation as to why—is not sufficient to support an FCRA claim." (CRA Def.'s Mot. Dismiss, Dkt. 34, at 6) (collecting cases). The CRA Defendants further contend that the Fifth Circuit has held that Plaintiff's allegations as to the "IQ Data Waterford collection" and "reporting Midland and I.C. System accounts" are not cognizable inaccuracies under the FCRA because "consumer reporting agencies are not required to investigate the legal validity of disputed debts under the FCRA." (*Id.* at 7) (citing *Reyes*, 140 F.4th at 289)).

Plaintiff responds by outlining what he describes as "specific documented factual inaccuracies" in the CRA Defendants' reporting. (Resp. to CRA Def.'s Mot. Dismiss, Dkt. 47, at 2–3). The "factual inaccuracies" Plaintiff cites, however, were not included in his Complaint, and "new facts or claims made in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings," such that the Court may only consider the factual allegations and claims made in Plaintiff's Complaint, *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 594 (W.D. Tex. 2020). Accordingly, the Court concludes that because Plaintiff has failed to specify what information about the two accounts is inaccurate in his Complaint, he has failed to state a plausible claim upon which relief can be granted under the FCRA against the CRA Defendants in Counts I and II of his Complaint.

**2. Count III of Plaintiff's Complaint**

Under this Count, Plaintiff alleges all Defendants violated Sections 1681b(a) and 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). Plaintiff claims that "[a]fter learning Plaintiff's file was subject to fraud alerts and security freezes, Defendants continued to furnish Plaintiff's reports for collection, skip tracing, and data mining; permit repeated same day auto finance and account review inquiries; and report information without a valid permissible purpose." (*Id.*). In Plaintiff's Response to the CRA Defendants' arguments to dismiss this Count against them, Plaintiff "acknowledges that [his] § 1681b impermissible purpose claim requires greater factual specificity to survive a 12(b)(6) motion." (Resp. to CRA Def.'s Mot. Dismiss, Dkt. 47, at 5). As such, Plaintiff requested leave to amend Count III "[r]ather than contest dismissal" of it. (*Id.*). The Court will therefore construe the CRA Defendants' Motion to Dismiss Count III specifically of Plaintiff's Complaint as agreed and grant dismissal without prejudice. In his Response to the CRA Defendants' Motion to Dismiss, Plaintiff also requested leave to amend his Complaint generally "to incorporate the specific allegations and evidence" he included in his Response. (Resp. to CRA Mot. Dismiss, Dkt. 47, at 2). As discussed earlier in this Order, the Court will allow Plaintiff to move for leave to amend his Complaint.[4] *See* Fed. R. Civ. P. 15(2) ("The court should freely give leave when justice so requires."); *Bazrowx*, 136 F.3d at 1054.

**IV. CONCLUSION**

For these reasons, the Court **IT IS ORDERED** that Midland's Motion to Dismiss, (Dkt. 8), is **GRANTED** and Plaintiff's claims against Midland are **DISMISSED** without prejudice.

---

[4] Given that the Court is granting Plaintiff leave to move to amend his Complaint, the Court will not yet reach the parties' arguments as to whether Plaintiff's claim as to the Waterford Trails account is time-barred.

**IT IS FURTHER ORDERED** that the CRA Defendants' Motion to Dismiss, (Dkt. 34), is **GRANTED**, and Plaintiff's claims against the CRA Defendants are **DISMISSED** without prejudice.

**IT IS FINALLY ORDERED** that Plaintiff may move for leave to amend his Complaint by filing the proper motion along with a proposed First Amended Complaint per Local Rule CV-7(b), on or before **July 21, 2026.**

**SIGNED** on June 30, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE