IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN PAUL BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:25-CV-2168-RP |
| | § | |
| EQUIFAX INFORMATION SERVICES, LLC, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendant SC Waterford Trails LLC's, d/b/a Waterford Trails TX, ("Waterford") Motion to Dismiss, (Dkt. 65); Plaintiff John Paul Brown's ("Plaintiff") Response, (Dkt. 68)[1]; and Waterford's Reply, (Dkt. 73). Also before the Court is Plaintiff's Motion for Leave to File a First Amended Complaint, (Dkt. 74); Defendant Midland Credit Management, Inc.'s ("Midland") Response, (Dkt. 75); Defendant Equifax Information Services, LLC's ("Equifax") Response, (Dkt. 77), and Defendant Experian Information Solutions, Inc.'s ("Experian") Response, (Dkt. 78). Plaintiff replied to each of these Responses, (Dkts. 79, 80, 81). Having considered the parties' submissions, the record, and the applicable law, the Court issues the following order.

**I. BACKGROUND**

On December 29, 2025, Plaintiff, proceeding pro se, filed his Complaint in this case. (Dkt. 1). Plaintiff claims that Defendants effectuated a "multi year campaign of credit reporting abuses, unlawful debt collection, and privacy violations." (*Id.* at 1). Plaintiff alleges this campaign commenced in 2021 when Plaintiff was a tenant at the Waterford Trails Apartments in Spring, Texas, and Waterford filed an eviction case against him in the Harris County Justice Court. (*Id.* at 2).

[1] Plaintiff's Response appears to be filed twice on the docket, (*see* Dkts. 68, 71). In this Order, the Court will reference only Plaintiff's first filing, (Dkt. 68).

Waterford dismissed the case on February 10, 2021, (*id.*), and subsequently "placed or sold" an account for the final move-out charges Waterford alleged Plaintiff owed to Defendant IQ Data International, Inc. ("IQ Data") for collection, (*id.* at 3). Then, according to Plaintiff, "IQ Data began reporting a collection tradeline for Waterford Trails TX on all three credit reporting agencies['] reports in or about March 2021, listing an original balance of 1,865 dollars and later inflating it to over 2,300 dollars, with status Collection and Charge Off." (*Id.*). From 2021 through 2025, Plaintiff alleges that he submitted multiple written disputes to IQ Data and all three credit reporting agencies—Defendants Equifax, Experian, and TransUnion, LLC ("TransUnion")—and made formal complaints to the Consumer Financial Protection Bureau ("CFPB") "detailing that the debt was based on a dismissed eviction, identity theft, and fraud." (*Id.*). Despite Plaintiff's actions, he alleges that all three credit reporting agencies continued reporting the IQ Data tradeline. (*Id.*).

Plaintiff also alleges that Defendant Midland "reported a Capital One Auto Finance account with a balance of 8,206 dollars as Collection and Charge Off" to the credit reporting agencies but that on "March 24, 2025, Midland sent Plaintiff a letter stating the account was closed, collections had ceased, the balance was 0.00 dollars, and Plaintiff had no further obligation." (*Id.*). Finally, Plaintiff also asserts that Defendant I.C. System ("I.C. System") reported an AT&T U-Verse collection to the credit reporting agencies but on "February 28, 2025, I.C. System sent a Credit Reporting Removal letter admitting it was unable to verify the account and had requested deletion from the credit reporting agencies." (*Id.*). Plaintiff contends that despite these letters from Midland and I.C. System, Equifax, Experian, and TransUnion continued reporting the respective collections as "active, derogatory, and collectible as late as December 2025." (*Id.*).

Further, Plaintiff purports that "[d]espite Plaintiff placing fraud alerts and a security freeze on his credit files after discovering identity theft indicators," the credit reporting agencies "show[ed] numerous account review, collection, and skip tracing inquiries from IQ Data, data brokers,

landlords, and lenders" on Plaintiff's reports. (*Id.* at 4). Plaintiff then describes several harms he has faced because of the credit reporting agencies' reports: denial of an auto finance application in February 2025; denial of vehicle financing by multiple lenders in 2024; denial or deterrence from housing opportunities; subprime FICO scores; and "severe emotional distress, including anxiety, humiliation, sleeplessness, and fear for his family's financial security." (*Id.*).

On June 30, 2026, the Court granted Midland's Motion to Dismiss for Failure to State a Claim, (Dkt. 8), and dismissed Plaintiff's claims against Midland without prejudice. (Order, Dkt. 64, at 13). The Court also granted Equifax and Experian's (referred to collectively alongside TransUnion as the "CRA Defendants") Motion to Dismiss, (Dkt. 34), and dismissed Plaintiff's claims against them without prejudice. (*Id.* at 14). The Court ordered that Plaintiff could move for leave to amend his Complaint[2] on or before July 21, 2026. (*Id.*). On July 20, 2026, Plaintiff filed his Motion for Leave to File a First Amended Complaint, (Dkt. 74).

Separately, on June 12, 2026, and June 24, 2026, respectively, Plaintiff moved first for Clerk's Entry of Default against Waterford and I.C. System and then for default judgment against Waterford. (Dkts. 45, 54). On July 1, 2026, Waterford moved to dismiss Plaintiff's claims against it under Federal Rules of Civil Procedure 12(b)(4)–(6). (Waterford Mot. Dismiss, Dkt. 65, at 1). Waterford contends that Plaintiff's motions for default judgment against it are improper and moot in light of Waterford's appearance on July 1, 2026, and that Waterford was not properly served with process in compliance with the Federal and Texas Rules of Civil Procedure. (*Id.* at 1 n.1). Default

---

[2] Plaintiff's Original Complaint brought the following claims: (1) a Fair Credit Reporting Act ("FCRA") violation for failure to assure accuracy against Equifax, Experian, and TransUnion (citing 15 U.S.C. §§ 1681n, 1681o); (2) a FCRA violation for failure to reinvestigate against Equifax, Experian, and TransUnion; (3) a FCRA violation for impermissible furnishing and access against all Defendants (citing 15 U.S.C. §§ 1681b(a), 1681b(f)); (4) a FCRA violation for violating their "furnisher duties" against IQ Data, Waterford, Midland, and I.C. System; and (5) a Fair Debt Collection Practices Act ("FDCPA") violation against IQ Data, Midland, and I.C. System." (Compl., Dkt. 1, at 4–6). Plaintiff sought actual damages; statutory damages under the FCRA and FDCPA; punitive damages; injunctive relief; and attorneys' fees, costs, and pre- and post-judgment interest against all Defendants, jointly and severally. (*Id.* at 6).

was not entered against Waterford, and as a result, the Court never considered Plaintiff's Motion for Default Judgment against Waterford, (Dkt. 54), prior to Waterford appearing in the case. Accordingly, the Court finds these motions to be moot as to Waterford. *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (confirming the Fifth Circuit's "policy in favor of resolving cases on their merits and against the use of default judgments"); *Smith, v. Westwood Auto Sales, LLC*, No. 4:22-CV-02394, 2023 WL 9234502, at *1 (S.D. Tex. Sept. 28, 2023) (mooting plaintiff's motion for default judgment because the defendant had appeared on the record).

## II. LEGAL STANDARDS

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Plaintiff is proceeding in this case pro se, and "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). "But even under this lenient standard, self-represented litigants must abide by the rules that govern the federal courts." *Thomason v. World Fin.*, No. 1:23-CV-00109-ADA, 2023 WL 4375499, at *2 (W.D. Tex. July 6, 2023), *report and recommendation adopted*, No. 1:23-CV-00109-ADA, 2023 WL 4833482 (W.D. Tex. July 27, 2023) (citing *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014)). Therefore, "pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief." *Simbaki*, 767 F.3d at 484.

## III. DISCUSSION

### A. Waterford's Motion to Dismiss

Waterford moves to dismiss Plaintiff's claims against it under Federal Rules of Civil Procedure 12(b)(4)–(6). (Waterford Mot. Dismiss, Dkt. 65, at 10). Because the Court determines that Plaintiff's claims against Waterford should be dismissed under Rule 12(b)(6) for failure to state a claim, the Court need not reach Waterford's arguments for dismissal under Rules 12(b)(4) and (5)

for failure to properly effectuate service of process on Waterford. *See Roque v. AT & T's Inc.*, 2013 WL 3832692, at *1 n.2 (E.D. La. July 23, 2013) (first citing *Bova v. Pipefitters & Plumbers Local 60, AFL–CIO,* 554 F.2d 226, 227-28 & n.7 (5th Cir. 1977) (concluding that, because plaintiff failed to state a claim on which relief could be granted, it was "unnecessary to decide whether several of the defendants were properly subjected to the personal jurisdiction of the district court"); and then citing *Harris v. Holder,* 885 F. Supp. 2d 390, 396 n.4 (D.D.C. 2012) (declining to address defendants' motions to dismiss under Rules 12(b)(2), 12(b)(3), 12(b)(4), and 12(b)(5) because the complaint failed to state a claim on which relief could be granted under Rule 12(b)(6))).

Plaintiff brings two claims against Waterford: (1) a FCRA violation for impermissible furnishing and access (citing 15 U.S.C. §§ 1681b(a), 1681b(f)) (Count III), and (2) a FCRA violation for violating its "furnisher duties" (Count IV). (Compl., Dkt. 1, at 5). Generally, Waterford moves to dismiss Plaintiff's claims against it because Plaintiff has not properly identified the specific statutory provisions allegedly violated by Waterford nor pleaded any facts specific to Waterford that would support a plausible claim for relief. (Waterford Mot. Dismiss, Dkt. 65, at 2 (asserting that the "sole factual allegations" in Plaintiff's Complaint concerning Waterford are that Plaintiff was formerly a tenant at an apartment owned by Waterford and that Waterford claimed that Plaintiff owed final move out charges)). Therefore, Waterford asserts that Plaintiff's claims "fail to meet the requirements set forth in Federal Rule of Civil Procedure 8(a)(2) and the plausibility standard set forth in *Twombly* and *Iqbal*." (*Id.*). Finally, Waterford also argues that Plaintiff's claims against Waterford are time-barred as a matter of law. (*Id.* at 2–3).

Plaintiff's Response focuses on his motions for default judgment against Waterford, (*see* Resp. to Waterford Mot. Dismiss, Dkt. 68, at 2–3), which the Court deemed moot in Section I, *supra*. The Court will not require Waterford to file a motion to set aside its default under Rule 55(c), as Plaintiff suggests, (*id.* at 5), because the Clerk of Court never entered default against Waterford.

As to the merits of Waterford's Motion to Dismiss, Plaintiff largely restates the facts Plaintiff outlines in his Complaint. (*Id.* at 4–5).

**1. Count III of Plaintiff's Complaint**

Under this Count, Plaintiff alleges that all Defendants violated Sections 1681b(a) and 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). Plaintiff claims that "[a]fter learning Plaintiff's file was subject to fraud alerts and security freezes, Defendants continued to furnish Plaintiff's reports for collection, skip tracing, and data mining; permit repeated same day auto finance and account review inquiries; and report information without a valid permissible purpose." (*Id.*). Plaintiff's conclusory assertion that "all Defendants" engaged in this conduct, without any specific conduct alleged by Waterford, constitutes improper group pleading. *See Magee v. BSN Sports, LLC*, No. 3:21-CV-01726-G-BT, 2022 WL 3701627, at *6 (N.D. Tex. Aug. 8, 2022), *report and recommendation adopted*, No. 3:21-CV-1726-G-BT, 2022 WL 3702035 (N.D. Tex. Aug. 26, 2022) (finding that shotgun pleadings "fail to definitively attribute particular conduct to specific defendants, thereby falling short of the federal pleading standard" and "are subject to dismissal under Rule 12(b)(6)."). But, construing Plaintiff's Complaint liberally, as he is proceeding pro se, the Court will evaluate whether Plaintiff has stated a plausible claim against Waterford under this Count.

"Section 1681b [of the FCRA] limits the circumstances in which consumer reporting agencies can provide consumer reports." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 876 (W.D. Tex. 2016). "To properly assert a violation of § 1681b(a) and recover statutory damages, a plaintiff must allege (1) there was a consumer report; (2) the defendant used or obtained the report; (3) without a permissible purpose; and (4) the defendant acted willfully." (*Id.*) (citing 15 U.S.C. §§ 1681b(a), 1681 n(a)(1)(A)). Plaintiff's Complaint fails to satisfy these requirements because Waterford is not a consumer reporting agency; rather, as Plaintiff himself alleges, Waterford is "a landlord and original creditor of an alleged rental debt related to Plaintiffs former residence,"

(Compl., Dkt. 1, at 2). *See Crain v. Credit Prot. Ass'n*, No. 3:09-CV-2353-D, 2010 WL 1223127, at *2 (N.D. Tex. Mar. 2, 2010), *report and recommendation adopted*, No. 3:09-CV-2353-D, 2010 WL 1233517 (N.D. Tex. Mar. 29, 2010). And, Plaintiff pleads no facts showing that Waterford furnished his consumer report to any user lacking a permissible purpose.

Plaintiff also alleges that Waterford's conduct violated § 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). "Section 1681b(f) of the FCRA only permits a person to use or obtain a consumer report for certain statutory purposes." *Kennedy v. Equifax Info. Servs. LLC*, No. SA-23-CV-00470-FB-ESC, 2024 WL 332925, at *7 (W.D. Tex. Jan. 29, 2024), *report and recommendation adopted*, No. CV SA-23-CA-00470-FB, 2024 WL 874147 (W.D. Tex. Feb. 29, 2024). "This section expressly makes the permissible purposes set out in § 1681b(a) applicable to users of credit reports and provides a means to impose liability for using or obtaining a consumer report in violation of the FCRA." *Crain*, 2010 WL 1223127, at *2. Plaintiff similarly fails to allege any facts regarding when or how Waterford obtained his credit report and how that act caused him harm. *See Kennedy*, 2024 WL 332925, at *7. Accordingly, the Court finds that this count should be dismissed against Waterford in its entirety.

**3. Count IV of Plaintiff's Complaint**

Concerning Count IV of Plaintiff's Complaint, Waterford asserts that Plaintiff "does not identify any specific subsection of the FCRA that Waterford allegedly violated in connection with its furnisher duties" and thus cannot state a plausible claim for relief under Count IV against Waterford. (Waterford Mot. Dismiss, Dkt. 10, at 5).

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA primarily regulates consumer credit reporting agencies, but it also creates various obligations for "furnishers of information" to provide accurate information to consumer credit reporting agencies. *Davis v. World Fin. Network Nat'l Bank*, 2009 WL 4059202, at *2 (N.D. Tex. Nov.

20, 2009). The FCRA does not define "furnisher of information," but courts have construed the term broadly to mean "an entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *14 (W.D. Tex. Aug. 23, 2010), *report and recommendation adopted*, 2010 WL 11652114 (W.D. Tex. Sept. 20, 2010).

Construing Plaintiff's claims liberally, as he is proceeding pro se, the Court will evaluate whether Plaintiff stated a plausible private right of action against Waterford as a furnisher of information,[3] even if he did not technically cite the correct subsection of the FCRA. "To state a claim against a furnisher under § 1681s-2(b) of the FCRA, a plaintiff must allege that []he notified a consumer reporting agency of inaccurate information, the consumer reporting agency notified the furnisher of the dispute, and the furnisher failed to conduct an investigation, correct any inaccuracies, and notify the consumer reporting agency of the results of the investigation." *Thomason*, 2023 WL 4375499 at *3. Section 1681s-2(b) also "requires a showing of a factual inaccuracy in suits against furnishers" because "damages would be impossible to prove without an inaccuracy." *Id.* (collecting cases). A credit entry is "inaccurate" within the meaning of the FCRA if "it is patently incorrect" or "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

The Court finds that Plaintiff has failed to state a plausible claim for relief under § 1681s-2(b) because he has not pleaded that any credit reporting agency notified Waterford that Plaintiff submitted a dispute of inaccurate information or that Waterford subsequently failed to investigate such a report. Plaintiff has also not alleged how the Waterford collection was "inaccurate" under

---

[3] Waterford concedes that it is a furnisher of information to credit reporting agencies. (Waterford Mot. Dismiss, Dkt. 65, at 9).

either definition in *Sepulvado*.[4] While Plaintiff repeatedly alleges Waterford's eviction case filed against him was dismissed, (Compl., Dkt. 1, at 2–3), that allegation does not suggest that Waterford's claim that Plaintiff owed final move out charges was inaccurate. Waterford ended that case by filing a motion of non-suit, which did not give rise to a final judgment on the merits.[5] (Reply in Support of Waterford Mot. Dismiss, Dkt. 73, at 4 (citing *Terry v. Howard*, 546 S.W.2d 66, 69 (Tex. Civ. App.—Dallas 1976, no writ) ("the mere filing of a motion of nonsuit cannot begin to run the court's jurisdictional time period since a rendition of final judgment is required")). Indeed, under Texas law, "a non-suit is a termination of the pleaded causes of action and asserted defenses without an adjudication of their merits that returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction." *Rexrode v. Bazar,* 937 S.W.2d 614, 619 (Tex.App.—Amarillo 1997, no writ) (citing *Molinar v. Plains Ins. Co.,* 660 S.W.2d 845, 849 (Tex.App.—Amarillo 1983, no writ)). Therefore, Plaintiff's allegation that Waterford "furnished information [it] knew or should have known was inaccurate and failed to reasonably investigate, correct, or delete it after notice from credit reporting agencies and Plaintiff," (Compl., Dkt. 1, at 5), is a mere legal conclusion that does not properly state a claim upon which relief can be granted, because Waterford's dismissal of its eviction case against Plaintiff did not free Plaintiff from his liability to pay Waterford the charges Waterford claimed Plaintiff owed.

Finally, Waterford argues that the "statute of limitations under the FCRA is the earlier of two years after the date of discovery or five years after the date of the violation." (Waterford Mot. Dismiss, Dkt. 65, at 12). *See* 15 U.S.C. § 1681p. This period "begins to run when a claimant

---

[4] The Court notes here that Plaintiff references several exhibits in his Complaint that were not attached to his filing.

[5] The Court takes judicial notice of Waterford's eviction action against Plaintiff in the Harris County Justice Court, *SC Waterford Trails LLC vs. John Brown, Kerrilyn Brown*, Case No. 214100005123. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *Mack v. Equable Ascent Fin., L.L.C.*, 748 F.3d 663, 665–66 (5th Cir. 2014). In the Fifth Circuit, "the republication of credit information resulting in a new denial of credit constitutes a distinct harm and thus gives rise to a cause of action that is separate from that arising from the original publication." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 636 (5th Cir. 2002). Plaintiff alleges facts that he has been disputing the Waterford collection since 2021—more than two years prior to filing the instant Complaint—but, Plaintiff also contends that he was denied credit in 2024 and as late as February 18, 2025. (Compl., Dkt. 1, at 4). Thus, the Court does not find from the record currently before it that Plaintiff's claims against Waterford are time-barred.

**B. Plaintiff's Motion for Leave to File First Amended Complaint**

As referenced previously, on June 30, 2026, the Court permitted Plaintiff to move for leave to amend his Complaint on or before July 21, 2026. (Order, Dkt. 64, at 14). On July 20, 2026, Plaintiff filed his Motion for Leave to File a First Amended Complaint, (Dkt. 74). On August 3, 2026, Midland filed a Response in Opposition to Plaintiff's Motion. (Dkt. 75). On August 10, 2026, both Equifax and Experian filed Responses to Plaintiff's Motion. (Dkts. 77, 78, respectively).

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286. The futility of amendment is one such substantial reason to deny leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863,

872–73 (5th Cir. 2000). A proposed amendment is futile if it fails to state a claim upon which relief could be granted. *Id.* at 873. Therefore, in determining futility, this Court will apply the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

The Court will also review again Plaintiff's original Complaint, (Dkt. 1), pursuant to 28 U.S.C. § 1915(e)(2) because Plaintiff brings his case *in forma pauperis*. A district court "shall dismiss" a case brought *in forma pauperis* at any time if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

**1. Counts I–III**

"The FCRA was enacted to impose the requirement 'that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" *Fisher v. Trans Union LLC*, No. SA-24-CV-00988-FB, 2025 WL 996451, at *2 (W.D. Tex. Mar. 13, 2025), *report and recommendation adopted*, No. CV SA-24-CA-0988-FB, 2025 WL 993374 (W.D. Tex. Apr. 2, 2025) (quoting 15 U.S.C. § 1681(b)). Plaintiff proposes amended claims against three credit reporting agencies ("CRAs") Equifax (Count I), Experian (Count II), and TransUnion (Count III) (together, the "CRA Defendants") for violations of two provisions of the FCRA—Sections 1681e(b) and 1681i. (Proposed First Am. Compl. ("FAC"), Dkt. 74-1, at 8–11). Section 1681e(b) requires a CRA to "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's report. 15 U.S.C. § 1681e(b). Section 1681i requires a CRA to "conduct a reasonable reinvestigation" if "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A). "To prevail on a claim under either Section 1681e(b) or Section 1681i, a plaintiff

must prove that his consumer reports included inaccurate information." *Fisher*, 2025 WL 996451, at *2.

Experian and Equifax contend, and the Court agrees, that Plaintiff's Proposed First Amended Complaint does not allege that any of the CRA Defendants—including TransUnion—reported inaccurate information.[6] First, as the Court has previously held, Plaintiff's allegations as to IQ Data's Waterford collection do not constitute a cognizable inaccuracy under the FCRA because "consumer reporting agencies are not required to investigate the legal validity of *disputed* debts under the FCRA." (Order, Dkt. 64, at 12) (quoting *Reyes*, 140 F.4th at 289)) (emphasis added). Plaintiff pleads that IQ Data was aware Waterford dismissed its eviction case against him and reported that the dismissal "does not negate the move out charges owed"; as such, IQ Data "continued to collect on, and report, the disputed balance." (Proposed FAC, Dkt. 74-1, at 6). Here, Plaintiff disputes the legal *effect* of Waterford's dismissal of its eviction case against Plaintiff on the debt Plaintiff owed to Waterford, not whether IQ Data's report of the Waterford collection was *inaccurate*. *See Estrada v. Experian Info. Sols., Inc.*, No. EP-21-CV-00114-FM, 2023 WL 4411034, at *3 (W.D. Tex. July 7, 2023) ("[F]ederal courts overwhelmingly agree that the FCRA only requires CRAs to investigate factual inaccuracies; they need not resolve legal disputes over an underlying debt.") (collecting cases). And, as the Court discusses earlier in this order, IQ Data was correct in its report to Plaintiff that Waterford's dismissal of its eviction case against Plaintiff did not negate the move out charges Waterford alleged Plaintiff owed.

Next, Plaintiff's allegations as to the Midland tradeline also do not support a cognizable inaccuracy because "[t]he FCRA allows credit reporting agencies to retain a 'charged off notation' on

[6] TransUnion did not file a response to Plaintiff's Motion for Leave to File a First Amended Complaint, (Dkt. 74).

a consumer's credit report for up to seven years," or, eighty-four months.[7] *Thomason*, 2023 WL 4375499, at *3 (citing 15 U.S.C. § 1681c(a)(4)). "A 'charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Id.* A sister court in this Division as well as courts across the country have rejected the argument that reporting recurring charge offs is actionable under the FCRA. *See, e.g.*, *id.*, *Otto v. TransUnion, LLC*, No. 6:21-CV-00379 AA, 2022 WL 787940, at *3 (D. Or. Mar. 15, 2022) (collecting cases). Accordingly, the Court concludes that Plaintiff's proposed claims under Counts I–III are futile.

**2. Counts IV & IX**

Plaintiff proposes amended claims against IQ Data (Count IV) and I.C. System (Count IX) under the Fair Debt Collection Practices Act ("FDCPA"). (Proposed FAC, Dkt. 74-1, at 11–12, 15–16). "To plead a viable FDCPA claim, a plaintiff must allege that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Le v. Midland Credit Mgmt., Inc.*, No. 1:25-CV-00870-ADA-SH, 2025 WL 4060085, at *2 (W.D. Tex. Nov. 10, 2025), *report and recommendation adopted*, No. 1:25-CV-00870 ADA-SH, 2026 WL 130798 (W.D. Tex. Jan. 14, 2026) (citing *Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 782 (E.D. Tex. 2023)). The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

---

[7] Plaintiff alleges that "[o]n April 2, 2026, Midland's counsel . . . sent Plaintiff a settlement communication admitting that Midland had requested deletion of the relevant tradeline in March 2025." (Proposed FAC, Dkt. 74-1, at 6). As the Court has reminded Plaintiff numerous times, offers of settlement are to be kept private before the parties and not presented to the Court. Further, "[o]ffers of settlement are not admissible to establish liability of a defendant or validity of a plaintiff's claim." *Fraser-Nash v. Atlas Van Lines, Inc.*, 534 F. Supp. 2d 729, 734 (S.D. Tex. 2008) (citing Fed. R. Evid. 408). And, the Court still does not see how Midland's charged-off notation is "inaccurate" given the case law described here and in the Court's previous Order, (Dkt. 64).

Plaintiff fails to allege that IQ Data or I.C. System is using any "false, deceptive, or misleading" representations or means in attempting to collect debt from Plaintiff. *Id.* As to Plaintiff's claim against I.C. System, a debt collector, Plaintiff alleges that "after investigating Plaintiff's dispute" in connection with a reported AT&T U-Verse account, I.C. System sent Plaintiff a letter stating that it "has been unable to verify the information reported" and that it had "requested that any information provided to the credit reporting agencies regarding this account be deleted or moved." (Proposed FAC, Dkt. 74-1, at 16). Then, Plaintiff alleges that "I.C. System has failed to appear or otherwise respond in this action, and Plaintiff is unable to confirm from the record whether the referenced deletion request was, in fact, honored by the credit reporting agencies to which it was directed." (*Id.*). Plaintiff has failed to allege why this claim is properly against I.C. System, given that whether the credit reporting agencies honored I.C. System's request is not in the control of I.C. System, and failed to make any allegations that I.C. System is using any "false, deceptive, or misleading" representations or means as a debt collector. 15 U.S.C. § 1692e. Plaintiff disputes the validity of the debts lodged against him, rather than any prohibited means of debt collection effectuated by these defendants. (*See* Proposed FAC, Dkt. 74-1, at 11–12). Accordingly, the Court finds these claims futile. [8]

**3. Counts V, VIII, & X**

Plaintiff proposes claims against furnishers of information IQ Data (Count V), Midland (Count VIII), and Capital One Auto Finance ("Capital One") (Count X) under FCRA § 1681s-2(b). (Proposed FAC, Dkt. 74-1, at 12–13, 14–15, 16–17). As discussed previously in this order, Section

[8] Plaintiff's original Complaint includes FDCPA claims against IQ Data and I.C. System in Count V. (Compl., Dkt. 1, at 5–6). Plaintiff's allegations in his Proposed First Amended Complaint provide greater detail—but the same core FDCPA claim—than in his original Complaint. (*Compare* Proposed FAC, Dkt. 74-1, at 11–12, 15–16 *with* Compl., Dkt. 1, at 5–6). Thus, the Court's conclusion that Plaintiff has failed to state a claim under the FDCPA against IQ Data or I.C. System applies to Plaintiff's FDCPA claims in both his original Complaint and his Proposed First Amended Complaint.

III.A.3, *supra*, "[t]o state a claim against a furnisher [of information to CRAs] under § 1681s-2(b) of the FCRA, a plaintiff must allege that []he notified a consumer reporting agency of inaccurate information, the consumer reporting agency notified the furnisher of the dispute, and the furnisher failed to conduct an investigation, correct any inaccuracies, and notify the consumer reporting agency of the results of the investigation." *Thomason*, 2023 WL 4375499 at *3. Section 1681s-2(b) also "requires a showing of a factual inaccuracy in suits against furnishers" because "damages would be impossible to prove without an inaccuracy." *Id.* (collecting cases). A credit entry is "inaccurate" within the meaning of the FCRA if "it is patently incorrect" or "is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

Concerning Plaintiff's claim against Midland, the Court finds again that Plaintiff has not alleged an "inaccurate" credit entry under the FCRA nor satisfied each of the elements of a § 1681s-2(b) claim outlined above. (*See* Order, Dkt. 64, at 7). Concerning Plaintiff's claim against IQ Data, the Court has explained previously that Plaintiff has not alleged an "inaccurate" credit entry as to IQ Data's Waterford collection.

Finally, as to Plaintiff's claim against Capital One, this proposed defendant is the servicer of a retail installment contract associated with a 2016 Dodge Charger Plaintiff presumably leased or purchased at some point in time. (Proposed FAC, 74-1, at 4). Plaintiff alleges that on February 28, 2020, Capital One "granted Plaintiff a payment accommodation on Account No. 6203133709991" and on February 11, 2025, "Capitol One sent Plaintiff a written communication . . . acknowledging that the debt associated with that account is time-barred." (*Id.* at 6). Plaintiff contends Capitol One continued to "furnish derogatory charge-off information on that account for 55 or more consecutive months." (*Id.* at 6–7). The Court finds that Plaintiff does not plead a plausible claim against Capital One under FCRA § 1681s-2(b). Plaintiff does not plead that he notified a CRA of inaccurate

information; that a CRA notified Capital One of the dispute; nor that Capital One failed to conduct an investigation, correct any inaccuracies, and notify the consumer reporting agency of the results of the investigation. *Thomason*, 2023 WL 4375499 at *3. Accordingly, the Court finds each of these claims futile.

**4. Counts VI & VII**

Plaintiff proposes claims against Waterford under the Texas Debt Collection Act ("TDCA") (Count VI) and for defamation per se (Count VII). (Proposed FAC, Dkt. 74-1, at 13–14). In pertinent part, the TDCA prohibits a debt collector from "threatening to take an action prohibited by law," from "misrepresenting the character, extent, or amount of a consumer debt" and from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code §§ 392.301(a)(8), 392.304(a)(8), 392.304(a)(19). Plaintiff alleges that "Waterford [] misrepresented the character and status of the disputed debt by preparing and transmitting a Final Account Statement reflecting a balance owed six days after its own underlying case had been dismissed with no judgment against Plaintiff, and without disclosing that dismissal, in violation of Tex. Fin. Code § 392.304." (Proposed FAC, Dkt. 74-1, at 13).

Because Waterford's dismissal of its eviction case against Plaintiff did not constitute a judgment on the merits as to Plaintiff's purported debt to Waterford, *see* Section III.A.3, *supra*, Plaintiff has not alleged that Waterford engaged in any of the activities prohibited by the TDCA and his proposed Count VI is futile. For these same reasons, the Court finds that Plaintiff's defamation per se claim against Waterford is also futile, as it rests on the same allegations which do not plausibly claim that Waterford published a false statement against Plaintiff.[9] (Proposed FAC, Dkt. 74-1, at 14).

[9] A cause of action for defamation under Texas law requires the plaintiff to prove: (1) the defendant published a false statement; (2) defamatory to the plaintiff, in that it damaged the plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement negligently as to its truth. *Green v. CBS Inc.,* 286 F.3d 281, 283 (5th Cir. 2002); *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

Because the Court finds that each of Plaintiff's proposed claims would be futile, the Court will not grant Plaintiff's Motion for Leave to File a First Amended Complaint. *See Myers v. CitiMortgage, Inc.*, 557 F. App'x 296, 297 (5th Cir. 2014) ("A district court may deny leave to amend a complaint if amendment would be futile. Amendment would be futile if the proposed amended complaint fails to state a claim for relief under Rule 12(b)(6).") (citations omitted). *See also Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (finding that granting leave to amend to pro se litigants is not required if the plaintiff has already pleaded his best case). Further, having reviewed Plaintiff's original Complaint, (Dkt. 1), pursuant to 28 U.S.C. § 1915(e)(2), the Court finds that each of the non-dismissed claims in the Complaint—i.e., Plaintiff's FDCPA claims against IQ Data and I.C. System—fail to state a claim upon which relief can be granted; therefore, the Court will dismiss Plaintiff's Complaint, (Dkt. 1),[10] in its entirety.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Waterford's Motion to Dismiss, (Dkt. 65), is **GRANTED** and Plaintiff's claims against Waterford are **DISMISSED WITHOUT PREJUDICE**.[11]

---

[10] In his original Complaint, Plaintiff also brought a claim against all Defendants arguing that they violated Sections 1681b(a) and 1681b(f) of the FCRA. (Compl., Dkt. 1, at 5). In Plaintiff's Response to the CRA Defendants' arguments to dismiss this Count against them, Plaintiff "acknowledges that [his] § 1681b impermissible purpose claim requires greater factual specificity to survive a 12(b)(6) motion." (Resp. to CRA Def.'s Mot. Dismiss, Dkt. 47, at 5). As such, Plaintiff requested leave to amend Count III "[r]ather than contest dismissal" of it. (*Id.*). Thus, the Court granted dismissal of this claim without prejudice and permitted Plaintiff to move for leave to amend, which he did. Plaintiff did not attempt to bring this same claim against any defendant in his Proposed First Amended Complaint, so the Court does not consider Count III of Plaintiff's Original Complaint to be a live claim in this matter. Further, IQ Data and I.C. Systems are not credit reporting agencies, so as described in Section III.A.1, *supra*, a claim of this kind could not plausibly be brought against these two defendants.

[11] Plaintiff did not move for leave to amend his claims against Waterford in his Response to Waterford's Motion to Dismiss, (Dkt. 68). While the Court typically does not dismiss a pro se plaintiff's claims for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend, the Court will do so here where the Court is satisfied Plaintiff has "plead[ed] his best case." *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Plaintiff has had multiple opportunities to cure the defects of his case and has not done so.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Clerk's Entry of Default against Waterford and I.C. System, (Dkt. 45), is **MOOT**.[12] **IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment against Waterford, (Dkt. 54), is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a First Amended Complaint, (Dkt. 74), is **DENIED**.

**IT IS FURTHER ORDERED** that, in light of this order, Plaintiff's Motion for Status Conference and Ruling on Pending Motions, (Dkt. 82), is **MOOT**.

As nothing remains to resolve, the Court renders Final Judgment pursuant to Federal Rule of Civil Procedure 58. **IT IS FINALLY ORDERED** that this case is **CLOSED** and each party bear its own costs.

**SIGNED** on August 31, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

[12] This Motion is moot as to I.C. System because the Court has determined that each of Plaintiff's live and proposed claims against I.C. System fail to state a claim upon which relief may be granted.